**EDELSBERG LAW, P.A.**
Scott Edelsberg (CA Bar No. 330090)
scott@edelsberglaw.com
1925 Century Park East, Suite 1700
Los Angeles, CA 90067
Tel: 305-975-3320
Fax: 786-623-0915

**SHAMIS & GENTILE, P.A.**
Andrew J. Shamis (*pro hac vice* forthcoming)
ashamis@shamisgentile.com
14 NE 1st Avenue, Suite 705
Miami, FL 33132
Tel: (305) 479-2299

*Attorneys for Plaintiff and the Putative Class*

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| **ROBERT ETRI,** individually, and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>**ONE MEDICAL GROUP, INC,**<br><br>Defendant. | Case No.: _____<br><br>**CLASS ACTION COMPLAINT**<br><br>**JURY TRIAL DEMANDED** |

Plaintiff, Robert Etri ("Plaintiff"), individually and on behalf of all others similarly situated, hereby brings this Class Action Complaint against Defendant, One Medical Group, Inc., ("Defendant" or "One Medical"), and alleges as follows:

**INTRODUCTION**

1.     This lawsuit is brought as a class action on behalf of Plaintiff and thousands of similarly situated One Medical customers who have been deceived into paying annual membership fees ("AMFs"). One Medical represents to customers that they must pay these AMFs in order to obtain any medical care or services from One Medical when, in fact, payment of the AMFs is entirely optional.

2.     One Medical is a membership-based "concierge" medical practice with at least 60 offices nationwide. Founded in 2007, One Medical added 80,000 new patients in 2015 and is currently valued at over $1 billion.

3.     Anyone with certain insurance coverage accepted by One Medical can seek medical services at a One Medical office. Upon information and belief, Aetna, Anthem Blue Cross, Blue Shield, Chinese Community Health Plan, Cigna, Health Net, and United Health Care, among others, all cover medical services provided by One Medical as an "in-network" provider.

4.     One Medical also offers additional, optional services to so-called "members," such as use of its mobile app and online appointment booking and messaging. To receive these additional, optional services and become a "member," consumers must pay an AMF of $149-$199 per year. However, neither "membership" nor payment of the AMF is actually required to receive medical services through One Medical. The well-kept secret of One Medical is that payment of the AMF is not required to make an appointment at a One Medical office or receive medical services from a One Medical provider.

5.     Nevertheless, One Medical falsely and deceptively represents that payment of the AMF is required in order to obtain any medical services, and intentionally omits that the AMF is *optional*.

6.     CareFirst BlueCross BlueShield, one of the health insurers that offered insurance coverage for One Medical, explicitly stated in a letter to its insureds (and One Medical) that One Medical's attempts to impose the AMF as a precondition to access services is improper:

> One Medical insists that it be able to require that CareFirst members pay an annual access fee of $200 prior to receiving any primary care services from One Medical. Such a requirement is prohibited by CareFirst's current PCMH contract with One Medical, since **CareFirst members have the right to access all health care services covered as part of their health plan with CareFirst without-as a pre-condition-being required to pay an additional access fee from any PCMH provider** ... CareFirst has repeatedly advised One Medical that any access fee must be voluntary for CareFirst members ... For some time,

CareFirst has had an agreement with One Medical making it clear that no access fee is required for CareFirst members.

7.     Still, One Medical forces consumers to pay the AMF before it allows them to access services through One Medical, and deceives consumers regarding the necessity of paying that fee when in fact that fee is (and must be) optional for individuals receiving healthcare services covered under their health insurance policies.

8.     The optional services covered by the AMF are limited. Recognizing that consumers would not want to voluntarily pay $149-$199 per year for use of little more than a mobile application and online appointment booking and messaging, One Medical engaged in this sustained, deliberate deception specifically designed and intended to maximize revenue.

9.     During all relevant times, One Medical's misrepresentations and omissions were made, *inter alia*, on its website and its mobile application, where customers could sign up and pay the AMF. In furtherance of its scheme, One Medical intentionally designed its website and mobile application such that it is impossible to create a One Medical account without paying the AMF.

10.     Additionally, consumers who try to sign up with One Medical over the telephone or in person are told that the AMF is mandatory and that they could not make an appointment or receive any services until they paid the AMF.

11.     In sum, there is no practical way for a consumer to opt-out of paying what is supposed to an ***optional*** annual membership fee and still obtain medical services through One Medical.

12.     Had Plaintiff and the Class members known known the AMFs were not required in order to receive medical services through One Medical, they would not have paid them.

13.     Plaintiff and the Class members have been injured by One Medical's practices. Plaintiff brings this action on behalf of himself, the putative Class, and the general public.

Plaintiff seeks actual damages, punitive damages, restitution, and an injunction on behalf of the general public to prevent One Medical from continuing to engage in its illegal practices described herein.

## PARTIES

14.    Plaintiff Robert Etri is a citizen and resident of Miami-Dade County, Florida. He was a One Medical member from 2017 to the present. Believing it to be mandatory to receive care at a One Medical facility, Plaintiff paid the $199 AMF in at least May 2020.

15.    Defendant One Medical is a California corporation with its principal place of business in San Francisco, California. One Medical is a "concierge" medical practice with at least 60 offices nationwide. The company is purportedly valued at over $1 billion.[1]

## JURISDICTION AND VENUE

16.    This Court has original jurisdiction of this action under the Class Action Fairness Act of 2005. Pursuant to 28 U.S.C. §§ 1332(d)(2) and (6), this Court has original jurisdiction because the aggregate claims of the putative class members exceed $5 million, exclusive of interest and costs, and at least one of the members of the proposed class is a citizen of a different state than One Medical.

17.    Venue is proper in this District pursuant to 28 U.S.C. §§ 1391(b)(1) and (2) because One Medical is subject to personal jurisdiction here and resides in this District, and because a substantial part of the events giving rise to the claims of Plaintiff asserted herein occurred in this District.

---

[1] *See* https://www.cnbc.com/2017/07/18/one-medical-snags-new-ceo-amir-rubin-from-unitedhealth.html

## FACTUAL ALLEGATIONS

### A.    One Medical's Misrepresentations and Omissions

18.    One Medical provides primary care medical services through a network of physicians and medical professionals in 60 offices nationwide. Those medical services are covered-as medical services through many other physicians and groups would be-as an in-network visit under various well-subscribed health insurance plans, including Aetna, Anthem Blue Cross, Blue Shield, Chinese Community Health Plan, Cigna, Health Net, and United Health Care.

19.    Upon, information and belief, each of the contracts between One Medical and those health insurers prohibits the assessment of "pay-to-play" fees, such as AMFs, charged by One Medical for access to its services.

20.    The Affordable Care Act also prohibits the assessment of this type of fee to access many types of medical services.

21.    Individuals with health insurance are entitled to receive services covered by their plan at no additional cost, outside of their co-pay or deductible. One Medical knows it is prohibited from charging extra-contractual fees for covered services, but most consumers do not. One Medical capitalizes on this informational disadvantage by charging AMFs that consumers think they are paying to be a part of the One Medical "Group" of consumers who are eligible to receive medical care at One Medical offices. The premise is fundamentally deceptive.

22.    One Medical does not want its potential members and members to know about the above prohibitions, or to know that the vast majority of services it provides are covered under their health insurance policies because One Medical profits from its steep, automatically-recurring annual AMFs, which consumers *think* they are paying as a prerequisite to receive

treatment at a One Medical facility, but which they are *in fact* paying for optional services of dubious value.

23.    Accordingly, One Medical misrepresents to consumers that individuals who are covered by health insurance policies for which One Medical is considered "in-network" must also pay the AMF to be eligible to receive treatment at One Medical offices, and omits that the AMFs are optional.

24.    For example, if a woman wants to schedule a "well-woman" visit, and that woman has a healthcare policy under the Affordable Care Act, that visit is supposed to be free-meaning no copay, regardless of whether the woman has met her yearly deductible-provided the woman chooses to go to an in-network provider, such as One Medical. But even when One Medical is in-network, an ordinary well-woman visit there is not free because the woman must pay the AMF. There is no practical way a woman can access that free, in-network service at One Medical without first paying the AMF because One Medical fails to disclose that women are able to receive the exact same treatment for free and misrepresents the necessity of paying the AMF.

25.    Indeed, at least one health insurance company has warned One Medical about the impropriety of its conduct. As set forth above, CareFirst BlueCross BlueShield sent a letter to its members on October 20, 2017, in which it stated that it told One Medical's that its AMF must be optional under its agreement.

26.    In other words, the One Medical's AMF must only cover services not included in an individual's healthcare plan and only when a consumer knowingly chooses to pay the fee for access to the additional services.

27.    The fact that One Medical is prohibited from up-charging services that are already included under consumers' healthcare policies means that consumers should be able to access the

vast majority of One Medical's services without paying the fee, including receiving treatment from a One Medical clinician at a One Medical office.

28.     One of the only alleged benefits of the One Medical membership that is arguably not already covered by an individual's insurance is the use of the One Medical mobile application and website portal, which allows members to request prescription refills online, book appointments online, and interface with clinicians. But consumers do not consider these alleged benefits as extra, as they do not know that they are separate from medical services included under their insurance plans. Because Medical misrepresents its AMF as a necessary prerequisite to receive any care at a One Medical facility, and omits that the AMF is optional, consumers choose One Medical thinking that those separate services are simply an extra benefit One Medical offers.

29.     One Medical's misrepresentations are both implicit and explicit on the One Medical website and in other policy documentation. For example, the following question and answer in One Medical's online FAQ, displayed at least until December 2017, expressly makes a false statement:

**Q: If I have insurance, do I still need to pay the membership fee?**

**A: Yes. Insurance and the annual membership fee are two separate, unrelated items**. We are in network with most PPO and HMO insurance plans, and will handle all the insurance paperwork for any of your visits. In that regard, we are similar to many more traditional doctor's offices. The membership fee, however, helps us offer services that are not typically covered by health insurance, such as online/email consultation, mobile prescription renewals, and other conveniences.

(Emphasis added).

30.     As discussed herein, the above representation is false and misleading. Insurance and the AMF are *not* "two separate, unrelated items." Individuals with insurance are not required to pay the AMF in order to make an appointment at a One Medical office and receive treatment from a One Medical clinician.

31.     Moreover, the very structure of the online and mobile portals requires consumers to pay the AMFs before they may access the medical services for which they are eligible. Throughout the sign-up process on both the One Medical website and mobile application, there is no option to skip payment of the AMF. Payment is required to complete enrollment, and it is one of the first steps in the process.

32.     Indeed, throughout the enrollment process, One Medical fails to inform consumers at any point that the membership fee is optional for individuals with insurance for which One Medical is covered in-network.

33.     One Medical charges these recurring, non-optional AMFs to members' credit cards, without informed consent, even when it knows those members carry insurance would not pay the AMF if given an option.

34.     Through both affirmative misrepresentations and omissions, One Medical leads reasonable consumers like Plaintiff to believe that the membership is required to in order to receive any treatment or services at a One Medical office from a One Medical clinician.

35.     The following excerpts of online complaints demonstrates how One Medical willfully fails to disclose to consumers that its membership fees are optional in order to receive treatment at a One Medical office:

> About 95% of the primary care physicians on my insurance plan work in One Medical offices. I tried to call and book and an appointment and was told I would have to apply for a financial hardship waiver - in order to see my doctor without the privilege of paying $150 for One Medical.

> I used to love this place. I paid the membership fee, but let it lapse as I haven't been to the doctor in a year. When I went to make an appointment, I was pressed for the membership fee. I said no. Then I was transferred to a membership associate to "answer my questions." I was then cajoled and shamed to pay the fee, or sign the waiver. I was asked how much I make a year. II I had seen an incredible doctor there who recently left OM. Now I'm wondering if their new policies are what pushed her out. When I asked the new doctor a question, she said, "That's no longer in our current model of offerings." Sounds a lot like corporate speak to me. I guess this is what happens when a for-profit company gets into the medical care business.

36.     Through its misrepresentations and omissions, One Medical intentionally coerces consumers into paying for healthcare services already covered by their insurance. If Plaintiff and members of the Class knew the membership fee was optional to receive care at a One Medical facility, they would not have paid it.

**B.     Plaintiff's Experience**

37.     Plaintiff signed up for One Medical in 2017. Believing that the annual membership fee was mandatory in order to receive an appointment at a One Medical office, Plaintiff paid the AMF when he signed up. At all relevant times, Plaintiff had valid health insurance for which One Medical Group was in-network.

38.     Immediately before signing up for One Medical, Plaintiff viewed One Medical's website, including the representations regarding the AMF contained thereon. The misrepresentations and omissions on the One Medical website made him believe that payment of the AMF was required in order to obtain medical care or services through One Medical. Additionally, Plaintiff had to pay the AMF in order to complete the online registration process, so there was no way to sign up without paying the AMF.

39.     One Medical never disclosed to Plaintiff that the AMF was optional, nor did One Medical give Plaintiff the choice to "opt out" of the AMF. As such, Plaintiff believed that he was (and in fact was) required to pay the AMF in order to obtain any medical services thorough One Medical, including those services covered by his health insurance policy.

40.     Had Plaintiff known the AMF was optional in order to receive medical services through One Medical, he would not have paid the fee.

## CLASS ALLEGATIONS

### PROPOSED CLASS

41.     Plaintiff brings this lawsuit as a class action on behalf of himself and on behalf of all others similarly situated pursuant to Rule 23 of the Federal Rules of Civil Procedure. The "Class" that Plaintiff seeks to represent is comprised of and defined as:

> All persons in the United States who paid One Medical's "annual membership fee" during the applicable statutes of limitations through the date a class is certified.

42.     Excluded from the Class are Defendant and its affiliates, parents, subsidiaries, employees, officers, agents, and directors. Also excluded are any judicial officers presiding over this matter and the members of their immediate families and judicial staffs.

43.     This case is appropriate for class treatment because Plaintiff can prove the elements of their claims on a class wide basis using the same evidence as would be used to prove those elements in individual actions alleging the same claims.

### NUMEROSITY

44.     The members of the Class are believed to be so numerous that joinder of all members is impracticable. Plaintiff does not know the number of members in the Class but believes the Class members number in the several thousands, if not more. The identity of such membership is readily ascertainable via inspection of Defendant's books and records or other approved methods. Class members may be notified of the pendency of this action by mail, email, internet postings, and/or publication.

### COMMON QUESTIONS OF LAW AND FACT

45.     There are common questions of law and fact as to Plaintiff and all other similarly situated persons, which predominate over questions affecting only individual Class members, including, without limitation:

a)      Whether payment of One Medical's AMF is optional;

b)      Whether One Medical required customers to pay its AMF before providing consumers with any health services;

c)      Whether One Medical's representations about its AMF are false, misleading, deceptive or likely to deceive;

d)      Whether One Medical failed to disclose that its AMF is optional;

e)      Whether One Medical's failure to disclose that its AMF is optional constituted a material omission likely to deceive;

f)      Whether One Medical provided an effective way for consumers to opt-out of paying the AMF;

g)      Whether Plaintiff and the Class members were damaged by One Medical's conduct;

h)      Whether One Medical's actions or inactions violated the consumer protection statute invoked herein; and

i)      Whether Plaintiff is entitled to a preliminary and permanent injunction enjoining Defendant's conduct.

46.     **Predominance of Common Questions:** Common questions of law and fact predominate over questions that affect only individual members of the Class. The common questions of law set forth above are numerous and substantial and stem from Defendant's uniform practices applicable to each individual Class member. As such, these common questions predominate over individual questions concerning each Class member's showing as to his or her eligibility for recovery or as to the amount of his or her damages.

**TYPICALITY**

47.    Plaintiff's claims are typical of the claims of the other members of the Class because, among other things, Plaintiff and all Class members were similarly injured through Defendant's uniform misconduct as alleged above. As alleged herein, Plaintiff, like the members of the Class, were deprived of monies that rightfully belonged to them. Further, there are no defenses available to Defendant that are unique to Plaintiff.

**PROTECTING THE INTERESTS OF THE CLASS MEMBERS**

48.    Plaintiff is an adequate class representative because they are fully prepared to take all necessary steps to fairly and adequately represent the interests of the Class, and because their interests do not conflict with the interests of the other Class members they seek to represent. Moreover, Plaintiff's attorneys are ready, willing, and able to fully and adequately represent Plaintiff and the members of the Class. Plaintiff's attorneys are experienced in complex class action litigation, and they will prosecute this action vigorously.

**SUPERIORITY**

49.    The nature of this action and the claims available to Plaintiff and members of the Class make the class action format a particularly efficient and appropriate procedure to redress the violations alleged herein. If each Class member were required to file an individual lawsuit, Defendant would necessarily gain an unconscionable advantage since it would be able to exploit and overwhelm the limited resources of each individual Plaintiff with its vastly superior financial and legal resources. Moreover, the prosecution of separate actions by individual Class members, even if possible, would create a substantial risk of inconsistent or varying verdicts or adjudications with respect to the individual Class members against Defendant, and which would establish potentially incompatible standards of conduct for Defendant and/or legal determinations with respect to individual Class members which would, as a practical matter, be dispositive of

the interests of the other Class members not parties to adjudications or which would substantially

impair or impede the ability of the Class members to protect their interests. Further, the claims

of the individual members of the Class are not sufficiently large to warrant vigorous individual

prosecution considering all of the concomitant costs and expenses attending thereto.

## COUNT I
### Violation of California's Consumers Legal Remedies Act ("CLRA")
### Cal. Civ. Code §§ 1750 , *et seq.*
### (Asserted on Behalf of the Class)

59.    Plaintiff repeats and realleges the above allegations as if fully set forth herein.

60.    The Consumers Legal Remedies Act, Cal. Civ. Code §§ 1750, *et seq*., was designed

and enacted to protect consumers from unfair and deceptive business practices. To this end, the

CLRA sets forth a list of unfair and deceptive acts and practices in Civil Code § 1770.

61.    Plaintiff and each member of the Class are "consumers" within the meaning of Cal.

Civil Code§ 1761(d).

62.    Plaintiff and the Class members engaged in "transactions" with One Medical within

the meaning of Cal. Civil Code § 1761(e) when they paid AMFs.

63.    Plaintiff has standing to pursue these claims because he has suffered injury in fact

and a loss of money and/or property as a result of the wrongful conduct alleged herein.

64.    Defendant violated and continues to violate California Civil Code §§ 1770(a)(5),

(a)(9), (a)(14), and (a)(19) by misleading consumers that payment of the AMFs are mandatory in

order to receive medical services through One Medical when in fact they are optional.

65.    Defendant continues to violate the CLRA and continue to injure the public by

misleading consumers about the mandatory nature of their AMFs. Accordingly, Plaintiff seeks

injunctive relief on behalf of the general public to prevent Defendant from continuing to engage

in these deceptive and illegal practices. Otherwise, Plaintiff, the Class members, and members of

the general public may be irreparably harmed and/or denied effective and complete remedy if such an order is not granted.

66.    Defendant had a duty not to mislead consumers about the AMFs, and the optional nature of the AMFs were material in that a reasonable person would have considered it important in deciding whether or not to pay the AMFs.

67.    Defendant's concealment, omissions, misrepresentations, and deceptive practices, in violation of the CLRA, were designed to induce and did induce Plaintiff and Class members to pay the AMFs.

68.    Defendant's acts, practices, representations, omissions, and courses of conduct with respect to the AMFs violate the CLRA in that, among other things: they violated and continue to violate § 1770(a)(5) because Defendant knowingly misrepresent(ed) that "membership" was required to obtain medical care and services; violated and continue to violate § 1770(a)(9) because Defendant knowingly advertise(d) services with intent not to sell them as advertised; violated and continue to violate § 1770(a)(14) because Defendant knowingly misrepresent(ed) that "membership" confers the right to obtain medical care and services; and violated and continue to violate § 1770(a)(19) because Defendant require(d) consumers to pay the AMF to obtain medical services.

69.    Defendant's acts and practices, undertaken in transactions intended to result and which did result in the payment of AMFs by consumers, violate Cal. Civil Code § 1770 and caused harm to Plaintiff and Class members.

70.    In accordance with Cal. Civ. Code § 1780(a), Plaintiff and the Class members seek injunctive and equitable relief on behalf of the general public for violations of the CLRA, including restitution and disgorgement.

71.     On February 3, 2022, Plaintiff's counsel mailed One Medical a notice of its violations of Cal. Civil Code § 1770 in accordance with Cal. Civil Code § 1782. One Medical failed to make the demanded corrections within thirty (30) days of receipt of Plaintiff's notice.

72.     As Defendant failed to implement remedial measures, Plaintiff and the Class members seek injunctive relief under Cal. Civil Code § 1782(d), enjoining the above described wrongful conduct by Defendant, as well as, actual and punitive damages for their CLRA claims.

73.     Plaintiff seeks the recovery of court costs and attorneys' fees pursuant to Cal. Civil Code § 1780(e).

**COUNT II**
**Violation of California's False Advertising Law ("FAL")**
**Cal. Bus. & Prof. Code § 17500, *et seq*.**
**(Asserted on Behalf of the Class)**

74.     Plaintiff repeats and realleges the above allegations as if fully set forth herein.

75.     California's False Advertising Law, Cal. Bus. & Prof. Code § 17500, states that "[i]t is unlawful for any ... corporation ... with intent … to dispose of ... personal property ... to induce the public to enter into any obligation relating thereto, to make or disseminate or cause to be made or disseminated ... from this state before the public in any state, in any newspaper or other publication, or any advertising device, or by public outcry or proclamation, or in any other manner or means whatever, including over the Internet, any statement...which is untrue or misleading and which is known, or which by the exercise of reasonable care should be known, to be untrue or misleading...."

76.     Defendant's material misrepresentations and omissions alleged herein violate Bus. & Prof. Code § 17500.

77.     Defendant knew or should have known that its misrepresentations and omissions were false, deceptive, and misleading.

78.     Pursuant to Business & Professions Code §§ 17203 and 17500, Plaintiff and the members of the Class, on behalf of the general public, seeks an order of this Court enjoining Defendant from continuing to engage, use, or employ their practice of misrepresenting that payment of the AMF is mandatory in order to obtain medical care and services from One Medical.

79.     Further, Plaintiff and the members of the Class seek an order requiring Defendant to disclose such misrepresentations, and additionally request an order awarding Plaintiff restitution of the money wrongfully acquired by Defendant by means of said misrepresentations.

80.     Additionally, Plaintiff and the Class members seek an order requiring Defendant to pay attorneys' fees pursuant to Cal. Civ. Code § 1021.5.

## COUNT III
### Violation of California's Unfair Competition Law ("UCL")
### Cal. Bus. & Prof. Code § 17200, *et seq.*
### (Asserted on Behalf of the Class)

81.     Plaintiff repeats and realleges the above allegations as if fully set forth herein.

82.     Plaintiff and the members of the Class have standing to pursue a cause of action against Defendant for unfair and/or unlawful business acts or practices because they have suffered an injury-in-fact and lost money due to Defendant's actions and/or omissions as set forth herein.

83.     California Business & Professions Code § 17200 prohibits acts of "unfair competition," including any "unlawful, unfair or fraudulent business act or practice."

84.     Defendant's deceptive conduct related to material omissions and/or material misrepresentations that the AMF was mandatory violates each of the statute's "unfair," "unlawful," and "fraudulent" prongs.

85.     The UCL imposes strict liability. Plaintiff need not prove that Defendant intentionally or negligently engaged in unlawful, unfair, or fraudulent business practices—but only that such practices occurred.

86.     A business act or practice is "unfair" under the UCL if it offends an established public policy or is immoral, unethical, oppressive, unscrupulous, or substantially injurious to consumers, and that unfairness is determined by weighing the reasons, justifications, and motives of the practice against the gravity of the harm to the alleged victims.

87.     Defendant's practices as described herein are (a) immoral, unethical, oppressive, and/or unscrupulous and violate established public policy as recognized by, *inter alia*, causing injury to consumers which outweigh any purported benefits or utility.

88.     A business act or practice is "fraudulent" under the UCL if it is likely to deceive members of the public.

89.     Defendant's practices, as described herein, constitute "fraudulent" business within the meaning of the UCL, in that they intentionally and knowingly misrepresented that the AMF was mandatory, through both their affirmative misrepresentations and material omissions. Such representations and omissions are likely to deceive reasonable consumers, to the consumer's detriment.

90.     A business act or practice is "unlawful" under the UCL if it violates any other law or regulation.

91.     Among other statutes, laws, and/or regulations, Defendant's acts and practices violate the following statutes, laws, and/or regulations:

   a.   Violating Cal. Civ. Code § 1750, *et seq*.;

   b.   Engaging in conduct in which the gravity of harm to Plaintiff and the Class outweighs the utility of the Defendant's conduct; and/or

   c.   Engaging in acts and/or practices and/or omissions that are immoral, unethical, oppressive, and/or unscrupulous and causes injury to consumers which outweigh its benefits.

92.     Defendant knew or should have known that its representations regarding the AMF were false, deceptive, and misleading.

93.     The harm to Plaintiff and the Classes outweighs the utility of Defendant's practices. There were reasonably available alternatives to further Defendant's legitimate business interests, other than the misleading and deceptive conduct described herein.

94.     Reasonable consumers had no way of knowing that Defendant was engaged in false, deceptive, and misleading advertising, and therefore could not have reasonably avoided the injuries that they suffered.

95.     Defendant's wrongful conduct is ongoing and part of a patter or generalized course of conduct repeated on thousands of occasions yearly.

96.     Defendant's business practices have misled Plaintiff and the proposed Class and will continue to mislead them in the future.

97.     Plaintiff relied on Defendant's misrepresentations.

98.     Had Plaintiff known the AMF was option, they never would have paid for it.

99.     As a direct and proximate result of Defendant's unfair, fraudulent, and/or unlawful practices, Plaintiff and Class members suffered and will continue to suffer actual damages.

100.    Pursuant to Bus. & Prof. Code § 17203, Plaintiff seeks an injunction on behalf of the general public enjoining Defendant from continuing to engage in the unfair competition described above, or any other act prohibited by law.

101.    Plaintiff also seeks rescission and an order requiring Defendant to make full restitution and to disgorge its ill-gotten gains wrongfully obtained from members of the Class as permitted by Bus. & Prof. Code § 17203.

102.    Additionally, Plaintiff and the Class members seek an order requiring Defendant to pay attorneys' fees pursuant to Cal. Civ. Code § 1021.5.

### COUNT IV
### Unjust Enrichment
### (Asserted on Behalf of the Class)

103.   Plaintiff repeats and realleges the above allegations as if fully set forth herein.

104.   By means of the wrongful conduct alleged herein, Defendant knowingly misrepresented that payment of the AMF was required in a way that was unfair, unconscionable, and oppressive.

105.   Plaintiff the members of the Class conferred an economic benefit upon Defendant by paying the AMFs, and Defendant had an appreciation or knowledge of the benefit conferred by Plaintiff and the members of the Class.

106.   Plaintiff and members of the Class would not have paid the AMFs had they known that it was optional.

107.   Defendant accepted and retained the economic benefit conferred by Plaintiff and members of the Class under circumstances as to make it inequitable for Defendant to retain the benefit without payment of its value.

108.   The financial benefits obtained by Defendant rightfully belong to Plaintiff and members of the Class. Defendant should be compelled to disgorge in a common fund for the benefit of Plaintiff and members of the Class all wrongful or inequitable proceeds of its conduct. A constructive trust should be imposed upon all wrongful or inequitable sums received by Defendant traceable to Plaintiff and the members of the Class.

### PRAYER FOR RELIEF

WHEREFORE, Plaintiff, individually and on behalf of the Class, demands a jury trial on all claims so triable and judgment as follows:

        A.     Certifying the proposed Class, appointing Plaintiff as representative of the Class, and appointing counsel for Plaintiff as lead counsel for the Class;

B.    Declaring that Defendant's conduct as described herein constitute violation of California's Consumers Legal Remedies Act, California's False Advertising Law, California's Unfair Competition Law and/or unjust enrichment.

C.    Enjoining Defendant from the wrongful conduct as described herein;

D.    Requiring Defendant to restore Plaintiff and members of the Class any monies that were acquired by means of its false and deceptive advertising, with interest;

E.    Awarding compensatory, direct, and consequential damages in an amount to be determined at trial;

F.    Awarding punitive and/or treble damages as the Court deems appropriate;

G.    Awarding pre-judgment interest at the maximum rate permitted by applicable law;

H.    Reimbursing all costs, expenses, and disbursements accrued by Plaintiff in connection with this action, including reasonable attorneys' fees, costs, and expenses, pursuant to applicable law and any other basis; and

I.    Granting such other and further relief as this Court deems just and proper.

## **DEMAND FOR JURY TRIAL**

Plaintiff and all others similarly situated hereby demand trial by jury on all issues in this Class Action Complaint that are so triable.

Dated:  April 25, 2022           Respectfully submitted,

**EDELSBERG LAW, P.A.**

By:*/s/ Scott Edelsberg*
Scott Edelsberg (CA Bar No. 330090)
scott@edelsberglaw.com
1925 Century Park East, Suite 1700
Los Angeles, CA 90067
Tel: 305-975-3320

**SHAMIS & GENTILE, P.A.**
Andrew J. Shamis (*pro hac vice* forthcoming)
ashamis@shamisgentile.com
14 NE 1st Avenue, Suite 705
Miami, FL 33132
Tel: (305) 479-2299

*Attorneys for Plaintiff and the Putative Class*